# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| **THOMAS FITTS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Case No. 09-CV-2323** |
| ) | |
| **VILLAGE OF GRANT PARK, FRED** ) | |
| **'J.R.' MEYER, in his individual capacity, and** ) | |
| **TIMOTHY SWANSON, in his individual** ) | |
| **capacity,** ) | |
| **Defendants.** ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#25) filed by Defendants the Village of Grant Park, Mayor Fred "J.R." Meyer, and Police Chief Timothy Swanson. This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Defendants' Motion for Summary Judgment (#25) is GRANTED.

## FACTS[1]

Plaintiff, Thomas Fitts, began working for the Village of Grant Park (Village) in 1988 as a part-time police officer. Plaintiff became a full-time police officer in 1994. Plaintiff was subsequently promoted to sergeant and later to lieutenant. Plaintiff's brother, Scott Fitts, was police chief for the Village until he was arrested in June 2008.[2] When his brother was arrested, Plaintiff

---

[1] The facts are taken from the parties' statements of undisputed facts and the documents submitted by the parties, including excerpts from deposition transcripts. This court has only included facts which are adequately supported by evidence in the record.

[2] This court takes judicial notice that Scott Fitts was charged by indictment in this court in Case No. 08-CR-20031. On May 28, 2009, Scott Fitts pled guilty to the offenses of wire fraud, filing a false tax return and illegally structuring financial transactions. On May 18, 2010, Scott Fitts was sentenced to a term of 63 months in the Federal Bureau of Prisons (BOP). He

was asked to become interim police chief. Plaintiff testified that he agreed to do it "on a short-time basis" and "there was no change" in his pay at that time. In February 2009, Mayor Bob Schurman and Warren Wessman, who was a trustee on the Village Board, had a discussion with Plaintiff at breakfast and talked about paying Plaintiff additional compensation for his extra work as interim chief. Plaintiff testified that they ultimately agreed upon $5,000 as the amount of compensation. Plaintiff testified that "[t]hey said they would get it voted on at the board and it would be no problem." Plaintiff testified that he was not aware of any vote by the Village Board to pay him $5,000 for the time he acted as interim chief. In fact, the Village Board voted regarding the $5,000 payment in April 2009 and four of the six trustees voted against it so it was not approved.

In April 2009, Schurman ran for reelection and was defeated by Fred "J.R." Meyer. Plaintiff testified that he supported Schurman for reelection by attending a couple of Schurman's golf outings. Meyer testified that he also attended some of Schurman's golf outings. Meyer ran for mayor with other candidates for Village office as members of the Unity Party. Meyer testified that the Unity Party was not affiliated with any political party. Meyer testified that the Unity Party no longer existed after the election.

On May 1, 2009, before Meyer took office as mayor, Plaintiff sent a letter to Schurman and resigned as interim chief due to "personal reasons." He asked to remain as a part-time police officer and lieutenant for the Village. As a part-time employee, Plaintiff was not entitled to accumulate sick days. It is undisputed that, as of April 2008, Plaintiff had accrued 131.6 sick days. Plaintiff testified that he discussed payment for the unused sick days with Schurman and Wessman and was told he

---

was ordered to remain on bond and report to the BOP on July 7, 2010. On June 4, 2010, Scott Fitts was arrested for violating the conditions of his bond and began serving his sentence.

could only be paid for 45 days.

On May 4, 2009, Meyer took office as mayor. Ken McCabe acted as interim police chief following Plaintiff's resignation. On August 1, 2009, Timothy Swanson took over as police chief. Swanson testified that he is not affiliated with any political party, and Plaintiff did not provide any evidence that Swanson was ever involved with the Unity Party. Swanson recommended to the Village Board that any part-time officers who had a supervisory rank be demoted to patrolmen in order to be in compliance with state law. The applicable Illinois statute provides, "Part-time police officers shall not be assigned under any circumstances to supervise or direct full-time police officers of a police department." 65 Ill. Comp. Stat. 5/3.1-30-21 (West 2008). On September 9, 2009, Swanson notified Plaintiff and another part-time officer, Tom Harwood, by e-mail that the Village Board had voted "to eliminate the supervisory ranks held by part time police officers." Plaintiff was also notified that his pay rate was reduced to $12.50 per hour.

Plaintiff testified that, at the beginning of September 2009, he called in sick for two days. Plaintiff testified that he was taken off the schedule for the month of September. Plaintiff testified that his supervisor, Sergeant Justin Dole, told him he was removed from the schedule for calling in sick. Plaintiff did not testify that he ever had a discussion with Swanson about being taken off the schedule. On November 7, 2009, Plaintiff sent a letter to Swanson and asked to be paid for his accumulated sick days. Plaintiff testified that he was only seeking payment for 45 days. Plaintiff's request was denied based upon the Village policy. The policy provides, in pertinent part:

> All sick leave accumulated above 45 days must be used before December 31st of the current calendar year or it will be forfeited. In case of resignation or termination at any time no compensation will

3

be paid.

Meyer, Wessman and Swanson testified that they did not know of anyone who was paid for unused sick days. Schurman testified that, while he was mayor, he discussed payment for unused sick days with Plaintiff and told Plaintiff he "didn't see how we could because of the way the policy was written."

PROCEDURAL HISTORY

On December 30, 2009, Plaintiff filed a Complaint (#1) against the Village, Meyer and Swanson. On April 16, 2010, Plaintiff filed an Amended Complaint (#17). Count I of his Amended Complaint was brought pursuant to 42 U.S.C. § 1983. Plaintiff alleged that Defendants Meyer and Swanson violated his First Amendment rights by discriminating against him due to his past political associations and lack of support for the Unity Party. Plaintiff alleged that Meyer and Swanson knowingly approved his demotion in rank, removal from the work schedule and reduction in his hours due to his lack of political affiliation with and lack of political support for the Unity Party. In Counts II and III Plaintiff alleged state law claims against the Village. In Count II, Plaintiff alleged that the Village breached an oral agreement to pay him $5,000.00 as payment for his services as the interim chief of police and an oral agreement to pay him for 45 unused sick days "in accordance with the Village's practice of cash compensation for unused sick days." In Count III, Plaintiff alleged that the Village was liable for additional payment for his services as interim chief of police based upon a theory of unjust enrichment.

On November 15, 2010, Defendants filed a Motion for Summary Judgment (#25) and supporting Exhibits (#26). Defendants argued that, based upon the evidence and the applicable case law, they are entitled to judgment as a matter of law on all three of Plaintiff's claims. On December

16, 2010, Plaintiff filed his Response to Motion for Summary Judgment (#30) with attached exhibits. Plaintiff also filed additional exhibits (#31, #32). On December 30, 2010, Defendants filed a Reply in Support of their Motion for Summary Judgment (#33).

ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. See Singer, 593 F.3d at 533. In addition, this court "need not accept as true a plaintiff's *characterization* of the facts or a plaintiff's legal conclusion." Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258, 688 F. Supp. 2d 815, 835 (C.D. 2010) (emphasis in original).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. Waldridge, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what

5

evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23.

PLAINTIFF'S CLAIMS

I. FIRST AMENDMENT CLAIM

In Count I of his Amended Complaint, Plaintiff alleged that he was the victim of retaliation and discrimination by Meyer and Swanson based upon his "lack of political support of the Unity Party." In their Motion for Summary Judgment, Defendants argued that there is absolutely no evidence that Meyer or Swanson "took any action against the Plaintiff in response to his 'political affiliations' or support of a different mayoral candidate." Defendants argued that "Plaintiff's surmise that actions were taken against him for political reasons is nothing more than conjecture."

In his Response, Plaintiff argued that he "was demoted in rank, temporarily removed from the schedule and received reduced work hours" and was "denied compensation for unused sick leave and interim chief of police services due to his political support for Schurman's administration." Plaintiff argued that he has a viable cause of action because the state may not discriminate on the basis of his political affiliation based upon Rutan v. Republican Party of Ill., 497 U.S. 62 (1990). The only evidence Plaintiff cited in support of his argument is that, on the night of the election, he personally drove Schurman to get the election results and he was observed by "Meyer's board." In support of this statement, Plaintiff cited to his own deposition testimony. At his deposition, Plaintiff

6

testified that, as he and Schurman drove up to get the election results, he saw "a couple of the board members of [Meyer's] administration." From this, Plaintiff concludes that "Meyer and Swanson are personally responsible for directing Plaintiff's demotion and denial of compensation."

Following a careful review of all of the documentation provided in this case, this court concludes that Plaintiff has not presented any "definite, competent evidence" which supports his First Amendment claim. This court concludes that the evidence cited by Plaintiff does not, in any way, support Plaintiff's claim that Meyer and Swanson took actions against him because of his political affiliation. Plaintiff's evidence shows that some members of the Village Board saw him with Schurman the night of the election and nothing more. This evidence does not show that Meyer and Swanson had anything against him based upon politics. This court notes that the undisputed evidence shows that Meyer, like Plaintiff, attended some of Schurman's golf outings. Also, Swanson testified that he was not affiliated with any political party and Plaintiff has presented no evidence that Swanson was ever involved in the Unity Party.

Most importantly, the evidence presented shows that Plaintiff agreed to act as interim police chief with no change in his pay and the Village Board never voted to approve any additional compensation for the time he worked as interim chief. The evidence also shows that Plaintiff voluntarily resigned as interim police chief and, at his request, became a part-time police officer. Based upon the Village's policy, he was no longer entitled to accumulate sick days and was also not entitled to receive payment for his unused sick days. In September 2009, the Village Board voted to demote Plaintiff from the rank of lieutenant and Tom Harwood from the rank of sergeant based upon an Illinois statute which prohibits a part-time police officer from supervising a full-time officer. Also in September 2009, Plaintiff was taken off the schedule and, according to Plaintiff,

7

Doyle told him it was because he had called in sick for two days.

This court concludes that, based upon the evidence presented, all of the actions Plaintiff has complained about were taken for reasons which had nothing to do with his political affiliation. In addition, most of the actions were taken by the Village Board and not by Meyer or Swanson. Plaintiff is asking this court to accept his characterization of the facts and infer that Meyer and Swanson took actions against him because of his political affiliation, an inference which would be based upon nothing but speculation and conjecture. However, in ruling on Defendants' Motion for Summary Judgment, this court is not required to accept Plaintiff's unsupported characterization of the facts and cannot draw inferences which are only supported by speculation and conjecture. See Singer, 593 F.3d at 533. Therefore, this court concludes that Plaintiff has not shown that there is a genuine dispute of material fact which requires a trial.

This court therefore concludes that Defendants are entitled to summary judgment on Count I of Plaintiff's Amended Complaint.

## II. BREACH OF ORAL CONTRACT

In Count II of his Amended Complaint, Plaintiff alleged that he was promised by Mayor Schurman and a trustee on the Village Board, Wessman, that he would be paid an additional $5,000 and would be paid for 45 unused sick days.

In their Motion for Summary Judgment, Defendants argued that Plaintiff cannot recover for breach of an oral contract because, as to the additional money Plaintiff wants for being interim chief of police, "there was never any vote by the village board to agree to additional compensation and Plaintiff in fact agreed to work as interim chief at his then current salary as a lieutenant." Defendants further argued that, as to Plaintiff's claim for compensation for unused sick days, Village

policy provided that he forfeited any unused sick days when he resigned from full-time employment. This court agrees.

According to Plaintiff's own testimony, Schurman and Wessman agreed that he should be paid an additional $5,000 and told him they would have it voted on by the Village Board. There was no reason for Plaintiff to believe that Schurman and Wessman had the authority to bind the Village for a payment which was never approved by the Village Board and, under Illinois law, they did not have such authority.

Under Illinois law, a municipality's power to contract is limited by statute and the municipality[3] cannot be bound unless statutory requirements are followed. McMahon v. City of Chicago, 789 N.E.2d 347, 350 (Ill. App. Ct. 2003). Only corporate authorities have the power to bind a municipality in a contract unless that power is delegated to another. See City of Belleville v. Ill. Fraternal Order of Police Labor Council, 732 N.E.2d 592, 594 (Ill. App. Ct. 2000), citing Chicago Food Mgmt., Inc. v. City of Chicago, 516 N.E.2d 880, 884 (Ill. App. Ct. 1987). "The general rule is that when an employee of a municipal corporation purports to bind the corporation by contract without prior approval, in violation of an applicable statute, such a contract is utterly void." City of Belleville, 732 N.E.2d at 594. The Illinois Municipal Code provides:

> Except as provided otherwise in this Section, no contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the

---

[3] The Illinois Municipal Code defines a municipality as a "city, village, or incorporated town in the State of Illinois." 65 Ill. Comp. Stat. 5/1-1-2 (West 2008). Accordingly, the Village is a municipality governed by the Municipal Code.

> expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof.

65 Ill. Comp. Stat. 5/8-1-7(a) (West 2008). This language has been interpreted to bar a municipal employee from receiving additional compensation for work already performed in the absence of a prior appropriation. See Metro. Water Reclamation Dist. of Greater Chicago v. Civil Serv. Bd., 684 N.E.2d 786, 789 (Ill. App. Ct. 1997). One who deals with a municipal corporation is presumed to know the extent of its power to contract. City of Belleville, 732 N.E.2d at 594.

Based upon Illinois law, neither Schurman nor Wessman could bind the Village to make a payment of additional compensation to Plaintiff. Defendants are correct that nowhere is there any evidence that there was any action by the Village Board to authorize payment of additional compensation or payment for unused sick days. In fact, the evidence shows that the Village Board voted against paying Plaintiff additional compensation and also shows that Plaintiff was not entitled to payment for unused sick days based on Village policy. Accordingly, the Village is entitled to summary judgment on Count II of Plaintiff's Amended Complaint.

### III. UNJUST ENRICHMENT

In Count III of his Amended Complaint, Plaintiff alleged that the Village "directly and voluntarily benefitted from Plaintiff's additional services as the Interim Police Chief" and have continued to refuse to pay Plaintiff the fair market value for his services as the Interim Police Chief.

Plaintiff therefore alleged that the Village is liable under Illinois law for unjust enrichment.

In their Motion for Summary Judgment, Defendants argued that the theory of unjust enrichment cannot stand where there is an express contractual agreement governing the relationship between the parties. Defendants also argued that the theory of unjust enrichment is not available in an action against the Village. This court agrees.

"The theory of unjust enrichment is based upon an implied contract of law and is not available where the parties' relationship is governed by contract." Howard v. Chicago Transit Auth., 931 N.E.2d 292, 298 (Ill. App. Ct. 2010). In this case, Plaintiff's own testimony established that Plaintiff agreed to act as interim chief of police without any change in the pay he was receiving as lieutenant. Therefore, he cannot recover based upon unjust enrichment. See Howard, 931 N.E.2d at 298; Batler, Capitel & Schwartz v. Tapanes, 517 N.E.2d 1216, 1219 (Ill. App. Ct. 1987). "Moreover, implied contracts are not recognized where one of the parties is a municipal corporation." Howard, 931 N.E.2d at 298; see also McMahon, 789 N.E.2d at 352; Klekamp v. City of Burbank, 639 N.E.2d 241, 245 (Ill. App. Ct. 1994). This is because "a contract cannot be implied if the statutory method of executing a municipal contract has not been followed." McMahon, 789 N.E.2d at 452. In this case, the Village Board did not approve additional compensation for Plaintiff and Plaintiff cannot recover based upon unjust enrichment.

In his Response, Plaintiff argued that he should be allowed to recover for unjust enrichment based upon equitable estoppel. Plaintiff contended that a municipality can be estopped from disclaiming liability for a contract if a municipal agent acted within the authority conferred upon him. This court notes that the case law cited by Plaintiff does not support the application of equitable estoppel under the circumstances of this case. This court agrees with Defendants that there

is no evidence that a municipal agent, whether the mayor or trustee or someone else, had been granted authority by the Village to agree to pay Plaintiff more money. In fact, the evidence in this case is very much to the contrary. This court concludes that there is absolutely no basis for finding that the Village should be estopped from disclaiming liability for compensation for Plaintiff which it never approved. This court further concludes that Plaintiff's argument borders on the frivolous. Defendants are entitled to summary judgment on Count III of Plaintiff's Amended Complaint.

IT IS THEREFORE ORDERED THAT:

(1) The Motion for Summary Judgment (#25) filed by Defendants the Village of Grant Park, Mayor Fred "J.R." Meyer, and Police Chief Timothy Swanson is GRANTED. Judgment is entered in favor of Defendants and against Plaintiff on all of Plaintiff's claims.

(2) The final pretrial conference scheduled for March 4, 2011, at 1:30 p.m. and the jury trial scheduled for March 14, 2011, at 9:00 a.m. are hereby VACATED.

(3) This case is terminated.

ENTERED this __10th__ day of __February__, 2011.

s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE